Hon. SAMUEL AMES, Chief Justice.
Hon. GEORGE A. BRAYTON, } Justices.
Hon. ALFRED BOSWORTH, }

---

THE NEW ENGLAND COMMERCIAL BANK v. THE STOCKHOLDERS OF THE NEWPORT STEAM FACTORY.

JOSIAH S. MONROE v. THE SAME.

The charter of a manufacturing corporation provided, that "all executions that shall issue against said corporation shall be levied on the property of said corporation; and for want of such property, the stockholders who were such at the time the contract was made, or liability incurred, shall be liable in their own persons and estates, as if the contract had been made or liability incurred by them personally. Stockholders shall be holden as such, for all debts and liabilities incurred up to the time of the sale or disposal of their stock, and public notice thereof given in a newspaper printed in Newport." *Held,* that a judgment creditor of the corporation, whose execution had been returned wholly unsatisfied for want of corporate property whereon to levy the same, might maintain, for the recovery of his debt, against the living stockholders of the corporation liable to him, an action at law, as against joint contractors for the same, in the nature of co-partners, and that this, in such a contingency, was his appropriate remedy; the stockholders who might be compelled to pay the debt having, under another clause of the charter, a remedy over against the corporation for the amount so paid, and against the other stockholders liable for the debt, for what they might pay over and above their just proportion of the same.

*Held,* further, that this liability for the corporate debts, upon the death of a stockholder, did not, at law, survive against his estate, and that no action at law could be maintained against the personal representative of such stockholder, to enforce the same; but that the estate of a deceased stockholder might be pursued by the creditor in equity, which, for the sake of the remedy, and to correct the form of the contract so as to carry out its substance, would construe it to be several as well as joint; that in such case a court of equity would decree in favor of the creditor of the corporation, an account of the personal estate of a deceased stockholder, and payment of his debt out of the surplus of the same, after the payment of the separate debts of such stockholder and of the expenses of settling his estate, without regard to the solvency or insolvency of the stockholders liable, and without reference to the state of accounts between the stockholders and the corporation; leaving the estate to seek repayment from the corporation, or contribution from those liable to it.

*Held,* also, that to a bill seeking such relief from the estate of a deceased stockholder, all the living stockholders and representatives of deceased stockholders, liable to the debt, must, as interested in the account to be taken, be made parties defendant to the bill; that if the real assets of the deceased stockholder are sought to be charged, his heirs at law, in case of intestacy, and his devisees, if there be a will, must also be made parties defendant to the bill; that, as two or more creditors for whose claims different sets of stockholders are liable cannot unite them all in the same bill, for the purpose of separate relief against those respectively liable to them, so the same creditor cannot enforce in the same bill, against the estates of deceased stockholders, different debts, for which all the estates pursued are not liable; but that there is no objection, on the ground of multifariousness, to a creditor's seeking, in the same bill, relief out of the estates of two or more deceased stockholders, all of which are liable to his debt.

If, after the retiring of a stockholder from the corporation, by the sale of his stock, and due public notice thereof, as required by the charter, the creditor gives up old notes, upon which the stockholder was liable, and takes new ones, especially if done for the purpose of absolving *him* from liability, and imposing it upon his successor in the stock, this operates as a complete release to him of the debt, both at law and in equity.

By force of sect. 8, ch. 161, and sect. 9, ch. 177, of the Rev. Stats. a suit in equity cannot be maintained against the executor of a deceased stockholder, for the payment of a corporate debt out of the personal assets of the testator, after the lapse of three years from the required publication by the executor of notice of his appointment and qualification to act for the estate in that capacity; the policy of these enactments being, to enable the speedy settlement of the estates of the dead.

THESE were actions at law and bills in equity brought by certain creditors of the Newport Steam Factory, an insolvent manufacturing corporation, for the purpose of enforcing their debts against the surviving, and the estates of the deceased, corporators, under the personal liability clause of the charter of the corporation, and were submitted to the court together, upon written arguments.

It appeared, that the Newport Steam Factory was incorporated by the General Assembly, for the purpose of manufacturing by steam power, at the June session, 1831; its capital, divided into sixteen shares, not to exceed two hundred thousand

dollars; the shares liable to be sold for the non-payment of any assessment, but the stockholders not to be personally liable to the corporation for any assessment in their stock beyond the sum of three thousand dollars on each share.

The eighth and ninth sections of the charter, as it was originally granted, were as follows:

" Sect. 8. And be it further enacted, that in all proceedings, whether in law or equity, in which said corporation shall be a party, the leaving an attested copy of the writ or summons, or other process, with the clerk or agent of the company at their usual place of business, shall be deemed a sufficient service thereof; and all executions that shall be issued against said corporation may be levied on the property of said corporation, and for want of sufficient property of said corporation, the stockholders, who were such at the time the debt was created or the contract entered into, shall be liable in their estates and persons for the payment thereof in the same manner as if said debt had been incurred or contract entered into by such stockholder personally; and any person having causes of action against said corporation, may, at his election, commence his action in the first instance against the stockholders in said corporation, who were such at the time the debt was contracted, contract entered into, or liability incurred, in the same manner as if they were co-partners, not incorporated; and that each and every of the stockholders in said corporation shall be liable as co-partners therein in the same manner and to the same extent as if they were corporators in any unincorporated manufacturing or commercial company.

" Sect. 9. And be it further enacted, that if the individual property of any stockholder or stockholders shall be sold for the payment of the debt of the corporation, or, if any individual stockholder or stockholders shall be compelled to pay such debt, or any greater proportion thereof than such stockholder or stockholders' proportion of said debt, according to the stock held by him or them in the capital stock of said corporation, then such stockholder or stockholders shall be entitled to an action, in his, her, or their name or names, against said corporation for the recovery of the amount so paid; or, such stockholder or stock-

holders shall have his, her, or their action on the case against the other stockholders for the amount so paid over and above his, her, or their proportion of such debt."

At the January session of the General Assembly, 1840, the then stockholders of the company presented their petition to the assembly, in which, after reciting that by the eighth section of the act incorporating them, it was provided, that suits for debts due from the corporation may be, in the first instance, commenced against the individual stockholders as though they had not been incorporated, and that said act differed, in this respect, from other charters granted by the assembly, both before and since, to other companies of manufacturers, they pray, that inasmuch as said eighth section may cause great inconvenience to the individual stockholders of the corporation, and afford no greater security to the public for the payment of the debts due from the corporation, said eighth section may be repealed, and the charter amended by inserting in place of the same the amendment by them presented.

The amendment presented, and which was passed by the General Assembly, was as follows : —

" An act in amendment of an act entitled an act to incorporate the Newport Steam Factory.

" Be it enacted by the General Assembly as follows : —

" Sect. 1. The eighth section of said act be, and the same is hereby, repealed.

" Sect. 2. In all proceedings, whether in law or equity, in which said corporation shall be a party, the leaving an attested copy of the writ or summons with the clerk or treasurer at his usual place of business, shall be deemed a sufficient service thereof; and all executions that shall issue against said corporation shall be levied on the property of said corporation; and for want of such property, the stockholders who were such at the time the contract was made, or liability incurred, shall be liable in their own persons and estates, as if the contract had been made, or liability incurred by them personally. Stockholders shall be holden as such for all debts and liabilities incurred up to the time of the sale or disposal of their stock,

and public notice thereof given in a newspaper printed in Newport."

On the 15th day of February, 1858, the Newport Steam Factory, being insolvent, and largely indebted to the New England Commercial Bank of Newport, and to Josiah S. Munroe, made an assignment to Seth W. Macy of all their real estate, for the equal benefit of all their creditors, which trust was accepted by Macy, and so far executed that he has realized about $16,000 gross proceeds from the sale of the assigned property, and has on hand some portion of it unsold. At the February term of the supreme court for the county of Newport, 1858, the New England Commercial Bank recovered two judgments against the Newport Steam Factory, one, for the sum of nineteen thousand four hundred and ninety-nine dollars, debt and costs, being for the amount of four promissory notes made by the company to the bank on the 3d day of February, 1852, upon which interest had been paid up to July 1, 1857 ; and the other, for the sum of seventeen thousand, eight hundred and seventy-seven dollars, debt and costs, being for drafts discounted by the bank for the company, between the latter parts of the months of March and August, 1857. Executions issued upon the judgments and were delivered to the sheriff of Newport county, who, on the 30th day of July, 1858, returned them wholly unsatisfied, being able to find neither goods nor chattels, nor real estate of the company upon which to levy the same.

Another creditor of the company, Josiah S. Munroe, also recovered two judgments against the company : one, at the April term of the court of common pleas for the county of Newport, 1858, for the sum of $3,596.65 debt, and $6.66 costs, and the other, at the August term of the supreme court, for the county of Newport, for the sum of $7,050.93 debts, and $11.35 costs. Upon both these judgments executions issued, were delivered to the sheriff of the county of Newport, and were returned by him unsatisfied, for want of any estate of the company to be found by him within his precinct.

The actions at law and suits in equity, which were now submitted to the court, were severally brought, in the county of

Newport, by the New England Commercial Bank, and by Josiah S. Munroe, to enforce their respective judgments against such living stockholders of the Newport Steam Factory, and the estates of such deceased stockholders, as they deemed liable under the charter of the company to pay the same.

The actions at law, and the positions in which they stood before the court upon the pleadings, were as follows : —

*First.* An action of the case by the New England Commercial Bank against Seth W. Macy, administrator of Joseph Weaver, late of Newport, deceased, the declaration in which, in substance, counted upon the above facts, so far as applicable to the New England Commercial Bank, and alleged, that the defendant's intestate, Weaver, was a corporator of, and shareholder in, the Newport Steam Factory when that company's liability for a certain portion of the plaintiff's claim, not specified, was incurred, and thereby became liable for, and in consideration thereof promised to pay the same ; that Weaver's estate had been represented insolvent, and commissioners had been appointed to receive and examine the claims against the same ; that the claim of the plaintiffs had been presented to and rejected by said commissioners, whereby, and by force of the statute in such case made and provided, the plaintiffs were compelled to pursue their remedy at the common law, and to commence this suit against Weaver's administrator. To this declaration the defendant had pleaded the general issue.

*Second.* A similar action by the same plaintiffs against Samuel Allen, executor of Samuel Allen, late of Newport, deceased, with similar averments in the declaration ; the declaration, however, specifying the claim sought to be enforced, as the four notes executed by the Newport Steam Factory on the 3d day of February, 1852, and for which the plaintiffs had recovered judgment against the company, for the sum of $19,492.81 debt, and costs of suit taxed at $6.20. To this action, also, the defendant had pleaded the general issue.

*Third.* A similar action by Josiah S. Munroe against Seth W. Macy, administrator of Joseph Weaver with similar averments in the declaration, to which no plea was filed.

*Fourth.* A similar action by the same plaintiff against

Daniel Tisdale, James F. Simmons, George Bowen, Stephen B. Chase, John Stevens, Benjamin H. Stevens, William C. Gibbs, Edward W. Lawton, and Benjamin Finch, all being served in the action but Daniel Tisdale, who could not be found by the sheriff, the declaration alleging them all to have been stockholders of the Newport Steam Factory at the time when the liability was incurred by the company, for which the plaintiff had recovered against it his larger judgment for $7,050.93 debts, and $11.35 costs, with similar averments, as to the return of the execution by the sheriff unsatisfied, for want of property of the corporation upon which to levy it, the charter liability, and the promise of the defendants in consideration of it to pay the plaintiff's debt. This action was originally brought in the court of common pleas for the county of Newport; and the defendants having submitted to judgment in that court, brought the case, by appeal, to this. The defendants pleaded, —

*First*, in abatement, that Joseph Weaver, when in life, was a stockholder in the Newport Steam Factory, and so remained at the time of his decease, in 1857; that in 1857, Seth W. Macy was appointed and qualified to administer on his estate; " whereby, and by virtue of the premises, the defendants aver, that the said several contracts referred to in the plaintiff's declaration as having been made with the Newport Steam Factory and the liability there set forth, was incurred jointly with the said Seth W. Macy, administrator, as he, by virtue of his office, was a stockholder of the said corporation at the time the debt was contracted, and the liability incurred upon which the plaintiff obtained his judgment; wherefore, because said Macy, administrator of said Weaver, is not named in said writ and declaration together with the said defendants, they pray judgment of said writ and declaration, and that the same may abate, &c."

To this there was a general demurrer filed by the plaintiff, in which the defendants joined.

The *second* plea to this action, was, in abatement, that at the time of the commencement of the action the Newport Steam Factory had and held a large amount of property

which was not exhausted, and which might have been levied upon by the sheriff, or taken and applied to the satisfaction of the execution referred to in the plaintiff's declaration, and which, by force of the act incorporating the Newport Steam Factory, should have been levied upon, taken, or applied to the satisfaction of the plaintiff's judgment before the commencement of this action against the defendants.

To this plea, the plaintiff replied,—

*First,* by traversing the allegation in the plea, that the Newport Steam Factory had, at the commencement of the action, a large amount of property upon which his execution might have been levied, and concluding to the country.

*Second,* by alleging his recovery of judgment against the company, the issuing of his execution, its delivery to the sheriff of the county of Newport, his inability, after diligent search and due inquiry, to find any property of the company on which to levy it, his demand upon the president and agent and treasurer of the company to show and set forth such property and their refusal to do so, and the return by the sheriff, for these reasons stated in his return, of the execution wholly unsatisfied. This replication concluded to the country.

*Third.* The plaintiff further demurred, generally, to this second plea, calling it, by mistake, the third plea.

The *third* plea to this action was the general issue, in which the defendants joined.

The *fifth* action submitted, was a similar action by the same plaintiff against the same defendants, with similar averments in the declaration, for the purpose of enforcing against them his claims against the Newport Steam Factory embraced in his lesser judgment against the company, for the sum of $3,596.65, debt, and costs of suit taxed at $6.60.

In this action the pleadings were the same as in the next preceding, except that no demurrer was filed to the second plea in abatement.

As in the *sixth* and *seventh* actions at law, which appear to have been brought by the New England Commercial Bank against George Bowen and others, as stockholders of the New-

14 *

port Steam Factory, the declarations were missing, it is unnecessary to detail the pleadings.

There were two bills in equity; both filed by the New England Commercial Bank, to enforce their claims against the company upon the stockholders, and the estates of stockholders, of the corporation. The *first*, which was filed by the bank on its own behalf, and on that of all other unsatisfied creditors of the Newport Steam Factory, who being thereunto lawfully enabled should come in and contribute to the expenses of the suit, was filed against Mary L. Ruggles, in her own proper person, and as administratrix of the estates of Nathaniel S. Ruggles, and of John P. Ruggles, late of Newport, deceased; Seth W. Macy, administrator of the estate of Joseph Weaver, late of Newport, deceased; Pernissa Gyles, executrix of the last will and testament of Charles Gyles, late of Newport, deceased; Samuel Allen, executor of the last will and testament of Samuel Allen, late of Middletown, deceased; John Stevens, Benjamin H. Stevens, George Bowen, Stephen B. Chase, William C. Gibbs, and Edward W. Lawton, all of Newport, Daniel Tisdale of Keokuk in the state of Iowa, James F. Simmons, of Johnston, in the state of Rhode Island, and the Newport Steam Factory; and alleged, that the Newport Steam Factory was, in the lifetime of said Joseph Weaver, Samuel Allen, and John P. Ruggles, deceased, and at the time of their decease, and whilst the said Mary L. Ruggles, as administratrix of the said Nathaniel S. Ruggles, was possessed of, or entitled to, his certain shares in the capital stock of said company, largely indebted to the complainants; that said indebtment arose out of certain loans and discounts made by the complainants to and for the Newport Steam Factory, and for which the complainants held four promissory notes of the company, all dated on the 3d day of February, 1852, and payable sixty days after date; one, for the sum of $6,800; one, for the sum of $7,000; one, for the sum of $4,000, and one, for the sum of $800, in all amounting to the sum of $18,600, upon which interest had been paid up to the 1st day of July, 1857; that said moneys were loaned and discounted by the complainants to said company in reliance upon

the liability of the said defendants now living, and of the said Weaver, John P. Ruggles, and Allen, now dead, for the payment thereof; and that the living defendants and said Weaver, Ruggles, and Allen, were stockholders of said corporation at the times the debts aforesaid were contracted; that the said Newport Steam Factory was also, in the lifetime of said Weaver, Ruggles, and Allen, and whilst said Mary L. Ruggles, as administratrix, was possessed of and entitled to his said shares, and still is, indebted to several other persons. The bill then goes on to state the obtaining by the plaintiffs of judgment against the Newport Steam Factory for the sum of $19,493.81 debt, and $6.20 costs of suit; the issue of execution thereon, and the return of the execution by the sheriff wholly unsatisfied for want of property to be by him found, whereon to levy the same; that, at the time of contracting of the debt for which said judgment was obtained, the said Mary L. Ruggles, as administratrix of said Nathaniel S. Ruggles, and the said John P. Ruggles, and the said Pernissa Gyles, Samuel Allen, deceased, Joseph Weaver, deceased, and the living defendants named, were the stockholders of said corporation; that said Nathaniel S. Ruggles was, in his lifetime, possessed of one share of the stock of said corporation and of considerable other property, real and personal; that he departed this life in February, 1847, leaving the said Mary L. his widow, and John P. Ruggles his only child and heir at law; and that, on the 5th day of April, 1847, the said Mary L. was appointed administratrix on his estate, and thereupon possessed herself of the personal estate and effects of her intestate to a considerable amount; that by force of the act incorporating the Newport Steam Factory, a copy of which is annexed to the bill, it is amongst other things provided, that the shares of the capital stock of said corporation shall be deemed to be the personal estate of the respective stockholders, and that by force of said act the said Mary L. Ruggles, as administratrix of said Nathaniel S., became and was possessed of and entitled to his said share, to be administered with his other personal estate, and as such administratrix continued to be possessed of and entitled to said share, as well as in her own right, until the 11th day of December, 1852; that

164 NEWPORT.

N. Eng. Commercial Bank *v.* Stockholders of Newport Steam Factory; Munroe *v.* Same.

said Mary L. soon after the death of said Nathaniel S. entered upon and took possession of one third part of his real estate as tenant in dower, and hath continued in possession thereof ever since that time until the 11th day of December, 1852, receiving the rents and profits thereof, and paid sundry assessments thereon, and otherwise acted as a stockholder in said company, and contracted with said company to indemnify her against her liability for the debts of the same; that said John P. Ruggles, upon and soon after the death of said Nathaniel S. entered upon and took possession of the residue of his real estate, and afterwards, and at sundry times and by divers assurances, the same being deeds of gift, conveyed to said Mary L. divers parcels of said residue of said real estate, and said Mary L. hath been ever since in the possession of the same, receiving the rents and profits thereof; that said John P. Ruggles continued in the possession of the whole or greater part of the said lands which came to him as heir of his said father, and in the receipt of the rents and profits thereof, and was during his lifetime and at his death seized and possessed of considerable other property, real and personal; that said John P. died in March, 1852, intestate and unmarried, leaving his mother, the said Mary L. his heir at law, surviving, and that said Mary L. was, on the 14th day of June, 1852, appointed administratrix on his estate, and hath possessed herself of his personal estate to a considerable amount; that said Mary L. soon after the death of said John P. as his heir at law, entered upon and took possession of all his real estate, and hath ever since continued, and now is in possession of the same, receiving the rents and profits thereof; that said Joseph Weaver was in his lifetime, and at the time of his death, seized and possessed of considerable real and personal estate; that he departed this life on the first day of April, 1856, and that Seth W. Macy was, on the second day of June, 1856, appointed administrator on his estate, and hath possessed himself of his personal estate to a considerable amount, and hath entered upon his real estate and possessed himself thereof, and ever since hath been and now is in possession of the same, taking the rents and profits thereof; that said Charles Gyles was in his lifetime and at the time

of his death seized and possessed of considerable real and personal estate, and by his last will and testament devised the same to his wife Pernissa Gyles, and appointed her his sole executrix; that said Charles died on the 10th day of May, 1849, leaving the said Pernissa him surviving, who proved his said will, and took upon herself the execution thereof, and possessed herself of all or most of the personal estate of her said testator, and as devisee and legatee of said Charles, has entered upon and enjoyed the rents and profits of the real estate and other property of the said Charles, and continued to hold and enjoy the stock or shares of the said Newport Steam Factory, until the 15th day of December, 1852, when she sold the same to the said corporation and required an indemnity from the said company to protect her from her liability for the debts of said company; that said Samuel Allen was, in his lifetime and at his decease, seized and possessed of considerable real and personal property, and by his last will and testament, bearing date the 5th day of September, 1853, appointed the defendant, Samuel Allen, the sole executor of his will; that he departed this life the 6th day of September, 1855, leaving the said Samuel Allen, defendant, him surviving, who duly proved said will, and took upon himself the execution thereof, and by virtue of the same possessed himself of all or most of the personal estate of his said testator, and of his real estate so far as requisite for the payment of the debts of said Samuel; that said Allen, in his lifetime, to wit, on the 11th day of January, 1853, sold his stock in said company to Benjamin Finch, and received from said Finch a bond, with surety, in the sum of $40,000, to indemnify his estate against the debts of said corporation, and paid said Finch for said indemnity the sum of $2,500, in addition to transferring to him his said stock; that on the 15th day of February, 1858, the Newport Steam Factory assigned to Seth W. Macy, their factory estate, and wharf, together with all their machinery, tools, &c. in trust for the benefit of their creditors; that the whole of the judgment debt of the plaintiffs remains due, and that the said Newport Steam Factory hath not any property whatever, upon which execution can be levied for the satisfaction of the same

or any part thereof, and that there are no means for paying the same in the hands of said trustee or otherwise. The bill then proceeds to set forth the amendment to the charter procured by the stockholders at the January session of the General Assembly, 1840, and to state, that the plaintiffs have frequently requested Mary L. Ruggles, as administratrix of Nathaniel S. and John P. Ruggles, and in her own behalf, the said Seth W. Macy, administrator of said Joseph Weaver, and the said Thomas J. Weaver, and the said Martha Potter and her husband, and the said Pernissa Gyles, executrix and sole devisee of the said Charles Gyles, and the said Samuel Allen, executor of said Samuel Allen, to account with them, and the other unsatisfied creditors of said corporation, for the personal estate of their respective decedents, and to apply the same to the payment of their respective demands, which they have refused to do, as well as their decedents in their lifetime, to whom similar application was made; that said personal estate of said Nathaniel S. and John P. Ruggles, of said Weaver, Gyles, and Allen was more than sufficient to pay all their respective, funeral and testamentary expenses, and the expenses of supporting their respective families and of settling their respective estates, of paying their respective separate debts, as well as the said debt of the plaintiffs, and the other unsatisfied debts of said corporation, and that it would so appear, if said Mary L., Seth W., Pernissa and Samuel would respectively set forth an account thereof, which they have respectively refused to do; and the plaintiffs insist, that in case such personal estate shall not prove, upon such an account, to be sufficient to answer said debts, that the deficiency ought to be made good out of the real estate of the said Nathaniel S. Ruggles, John P. Ruggles, Joseph Weaver, Charles Gyles, and Samuel Allen, respectively; and that the same, or a sufficient part thereof, ought to be sold or mortgaged for that purpose, but that the said Mary L. Ruggles, Pernissa Gyles, Seth W. Macy, the said Thomas J. Weaver, and the said Martha Potter, and the said Samuel Allen refuse to account for the rents and profits of the real estate by them received, or to apply the same towards the payment of said debts. The bill then prays that an account may be taken

of the respective personal estates of said Nathaniel S. Ruggles, John P. Ruggles, Joseph Weaver, Charles Gyles, and Samuel Allen, and of what part of the same has been disposed of in the payment of funeral expenses, &c. of the separate debts of the said deceased, and what separate debts of the deceased remain unpaid; and that the balance of the respective personal estates of said decedents, after payment of said expenses and separate debts, may be ratably applied to the payment of the debt of the plaintiffs and of the debts of the other unsatisfied creditors of said corporation; and in case of such balance proving insufficient for that purpose, that an account may be taken of the rents and profits of the real estates of said Nathaniel S. Ruggles, Joseph Weaver, Charles Gyles, and Samuel Allen respectively received by them the said ———, and that what may appear to have been received by them or either of them, or a sufficient part thereof, may be applied in or towards making good the said deficiency; and in case the said several funds should prove insufficient for the payment of said debts, that a sufficient sum of money may be raised by sale or mortgage of such real estates respectively; and that all proper parties may be decreed to join in such sale or mortgage, and that the money to arise from such sale or mortgage may be paid to the plaintiffs and to the other unsatisfied creditors of the said corporation, and for general relief.

To this bill, the defendants, Macy, Gyles, Allen, John Stevens, Bowen, Lawton, Gibbs, and Simmons put in their several answers, the other defendants having filed no answers.

The answer of Macy alleged, that on the 19th day of August, 1847, his intestate, Joseph Weaver, became the owner, by purchase from one George Hall, of one share in the capital stock of the Newport Steam Factory; that at that time, the stockholders of the company consisted of John Stevens, William C. Gibbs, and George Bowen, each of whom owned two shares, and John and Benjamin Stevens, Samuel Allen, Charles Gyles, the representatives of Nathaniel S. Ruggles, George Bowen and Stephen B. Chase, Edward W. Lawton, Daniel Tisdale, and James F. Simmons, who owned one share each, except the said Stevenses, who held, as well as the said Bowen and

Chase, a share between them, making in all fifteen shares, which comprised the whole capital stock of said company; that upon the death of his intestate and his appointment as administrator, he represented the estate of his intestate to be insolvent, whereupon commissioners were appointed to receive and examine the claims against the estate; that said commission was, and for some time before the 8th day of September, 1858, when this bill was filed, had been open for the reception of claims against the estate of his intestate; but that the plaintiffs had presented no claim to said commissioners, and the respondent contended that he was not bound to answer the bill. He, nevertheless, proceeded to set up in defence, that $1,500, part of the plaintiffs' claim, grew out of a loan made by the plaintiffs to the Newport Steam Factory, on the 31st day of March, 1847, and $4,000, another part of it, out of a loan made by the plaintiffs to the corporation, on the 24th day of June, 1847, before his intestate became a stockholder in said company, for which said portions of the debt of the plaintiffs, his intestate was not liable; that at the times when these portions of said debt accrued, George Hall, Edward King, and J. T. & P. H. Rhodes were respectively stockholders of said corporation, and that said Hall, King, and James T. Rhodes, the surviving partner of J. T. & P. H. Rhodes, are still in full life; that Hall then owned two shares of said stock, King one share, and J. T. & P. H. Rhodes, one share, and should have been made parties defendant to the bill; that of the residue of the debt of the plaintiffs, $7,000, accrued on the 9th day of October, 1847, and $6,800, on the 20th day of January, 1848, when said amounts were loaned by the plaintiffs to the company, when his intestate was the owner of one share in the stock of the company, but that he was ignorant, whether his intestate's estate in his hands was liable for said sums or any portion of the same, and submitted the same to the court; that after the payment of the debts of his intestate and the expenses of settling his estate, the balance would be quite insufficient to pay the plaintiffs' debt. He denied that he had ever entered upon or possessed himself of the real estate of his intestate, but admitted that the Newport Steam Factory had executed to him an assignment in trust

of their property for the benefit of their creditors ; that he had already realized some $16,000, gross proceeds of the assigned property sold by him, and that he still held a part of the real estate assigned of which he expected to make sale at the first favorable opportunity.

The answer of *Pernissa Gyles* admitted that her testator, Charles Gyles, was, during his lifetime, and at his death on the 10th day of May, 1849, the holder of one share in the capital stock of the Newport Steam Factory ; that he made and published his last will and testament in the manner and form and to the effect set forth in said bill of complaint; that said will was admitted to probate, that she procured letters testamentary as executrix thereof, and that by the provisions of said will she was made sole devisee of all the estate, real and personal, of said Charles Gyles, after payment of his just debts and funeral and other expenses ; that upon obtaining her letters testamentary, she, on the 21st day of July, 1849, caused public notice of her appointment and qualification as executrix of said Charles Gyles to be published in the " Newport Mercury," a newspaper printed and published in Newport, in conformity with the statute in such case made and provided ; and thereafter went into possession of the estate, real and personal, of said Charles Gyles, taking the rents and profits thereof, and therefrom proceeded to pay the debts and funeral expenses of said Charles, and other expenses incidental to the settlement of his estate ; that afterwards, on the 21st day of April, 1851, the final account of this defendant, as executrix of the last will and testament of said Charles, was duly presented to, examined, settled, and ordered to be recorded by the court of probate of Newport; that by the provisions of said will she became entitled to, and possessed herself of, all the remaining estate and effects, both real and personal, of which the said Charles Gyles died seized and possessed, subject only to such unsatisfied debts and demands due from said Charles as might be produced and demanded from her as executrix within three years from the date of said publication of notice of her appointment as aforesaid ; and that more than three years had elapsed subsequent to the publication of said notice before the filing of this bill on the

8th day of September, 1858, and that by force of the statute, and in equity and good conscience, said bill of complaint ought not further to be maintained against her either in her capacity of executrix, devisee, or in her own right.

The answer of *Samuel Allen*, after admitting the will of his testator, his death on the 6th day of September, 1855, the probate of the will on the 15th day of October, 1855, the issue of letters testamentary to him as executor of said will and public notice thereof given by him, also admits, that his testator, Samuel. Allen, was formerly a stockholder of the Newport Steam Factory, being the holder of one share in the capital stock thereof, but avers, that on the 10th day of January, 1853, his testator sold and conveyed said share to Benjamin Finch, which sale was recognized by said corporation by the transfer of the same according to the forms of the charter; that due notice of said sale and transfer was by his testator published for three weeks in the "Newport Mercury," and that he was no longer responsible for the debts of said company, and that no action was commenced by any creditor of said corporation against this defendant or his testator until the filing of this bill. The answer then avers that $1,500 of the claim of the plaintiffs against the corporation was incurred on the 31st day of March, 1847, and $4,000, also part of said claim, was incurred on the 24th day of June, 1847; that at those times, George Hall, Edward King, and J. T. & J. P. Rhodes, were stockholders of said corporation, and as such liable for its debts, and should have been joined as defendants to the bill; and that if his testator's estate is liable for any portion of the debts of said corporation it is liable only to the amount of the par value of the share held by him at the time when said debts were contracted, to wit: to the amount of $3,000.

The answer of *Edward W. Lawton* admits that he is, and has for a long time been, a stockholder in the Newport Steam Factory, as alleged in the bill, but avers that $800, part of the plaintiffs' demand, was incurred on the 31st day of March, 1847, and $4,000, another part of the same, was incurred on the 24th day of June, 1847, when George Hall, J. T. & J. P. Rhodes, and Edward King, were stockholders of the corporation, and when

AUGUST TERM, 1859.					171

N. Eng. Commercial Bank *v.* Stockholders of Newport Steam Factory; Munroe *v.* Same.

Charles Gyles, Joseph Weaver, and James F. Simmons, were not stockholders, and claims that, so far as this portion of the plaintiffs' claim is concerned, the bill is defective in not joining Hall, James T. Rhodes, as surviving partner of the firm of J. T. & J. P. Rhodes, and King as defendants, and also defective for misjoining the representatives of Gyles and Weaver, and James F. Simmons as defendants; that as to $7,000, part of the balance of the plaintiffs' claim, the same was incurred on the 9th day of October, 1847, and that the remaining part of said claim, exclusive of interest, was incurred on the 28th day of January, 1848, when Samuel Allen, J. & B. H. Stevens, Charles Gyles, George Bowen & Co., a firm consisting of George Bowen and Stephen B. Chase, Nathaniel S. Ruggles, John Stevens, George Bowen, William C. Gibbs, Edward W. Lawton, James F. Simmons, Joseph Weaver, and Daniel Tisdale, were sole stockholders of said corporation; and that the bill is defective in misjoining causes of action as well as parties; that if the defendant is at all liable for the debts of the corporation he is not liable for a greater sum than the par value of the share of stock held by him in the capital stock of said corporation, to wit: for the sum of $3,000; and at all events is not liable as a joint contractor for all said debts, but only for such proportion of them as his proportion of the capital stock, to wit: one share out of fifteen shares, bears to the whole capital stock of the corporation; that the Newport Steam Factory is indebted, in a large sum of money, to the defendant for advances, and that the amount of his said advances should be deducted from the proportion of the liabilities which he should be decreed to pay.

The joint and several answer of *John Stevens* and *George Bowen*, admits that they were, and for a long time have been, stockholders in the Newport Steam Factory as alleged in the bill, and that said corporation is indebted to the plaintiffs as is in said bill alleged. In other respects, this answer sets up the same defences, of nonjoinder of parties and misjoinder both of parties and causes of action, as the answer next preceding; and claiming the same restrictions of liability, also sets up large advances made by the respondents to the corporation, and

insists, that the amount thereof should be deducted from such proportion of the debts as they should be decreed to pay.

The answer of *William C. Gibbs*, admits that he was a stockholder in the Newport Steam Factory, and the indebtment of the corporation to the plaintiffs as alleged in the bill, and sets up the same nonjoinder of parties, and misjoinder of parties and causes of action, as the answer of Edward W. Lawton; and claims the same limitation of liability for the debts of the corporation, but makes no claim for deduction for advances.

The answer of *James F. Simmons* admits, upon information and belief, the stockholdership of Nathaniel S. Ruggles, Joseph Weaver, Charles Gyles, and Samuel Allen, in the Newport Steam Factory, as stated in the bill; their deaths, and the other facts stated in the bill as to the disposition of their estates and possession of the same by Mary L. Ruggles, Seth W. Macy, Pernissa Gyles, and Samuel Allen, their respective personal representatives. Professing the respondent's ignorance of the amount of the debt due from the Newport Steam Factory to the plaintiffs, it avers, upon information and belief, the same nonjoinder of Hall, James T. Rhodes, and Edward King, as parties defendant, as to $4,800, part of the plaintiffs' claim, as the answer of Edward W. Lawton, and the misjoinder of the respondent and of the representative of Weaver; that when the remainder of the debt of the plaintiffs was contracted, the said Samuel Allen, now deceased, until on or about the 10th day of January, 1858, and from and after that time Benjamin Finch, in his stead, by purchase thereof, owned one share; that the said Charles Gyles, until his decease, on or about the 10th day of April, 1849, and after his decease, the said Pernissa Gyles, as his personal representative or executrix and sole devisee, owned one share of the stock of said corporation with Joseph Weaver, until his decease on or about the 1st day of April, 1856, when he was succeeded in his interest in said share by Seth W. Macy, his personal representative, but in what proportions the respondent is wholly ignorant; that with these, said John and B. H. Stevens, said firm of George Bowen & Co. the said Mary L. Ruggles, either

AUGUST TERM, 1859.                173

N. Eng. Commercial Bank *v.* Stockholders of Newport Steam Factory; Munroe *v.* Same.

as administratrix of said Nathaniel S. or in her own right, said John Stevens, George. Bowen, William C. Gibbs, Edward W. Lawton, Joseph Weaver, since deceased, and this defendant, were the sole stockholders of said corporation; that, though after the decease of said Nathaniel S. Ruggles and Charles Gyles, their personal representatives, the said Mary L. and Pernissa, attempted to make sale of their respective shares of stock to said corporation, the attempted sale was invalid, illegal, and void, because, 1st: the said corporation had no power to purchase its own stock; 2d: because the meeting of said corporation, at which said pretended sale and purchase were attempted to be made, was not legally and properly notified and called, inasmuch as no legal notice of the call thereof was given to all the members and stockholders of said corporation; and 3d: because a sufficient number and quorum of said stockholders was not present at said meeting to transact such business as the purchase of its own stock; and the answer sets up the misjoinder thereby caused of the causes of action embraced in the bill. The answer admits the judgment of the plaintiffs, the issue of execution thereon, and the return thereof by the sheriff, and the charter of the Newport Steam Factory and amendment thereof as alleged in the bill, and claims that the number of shares of the capital stock of the corporation was fifteen, of the par value of $3,000 each; and setting out the shareholders of the corporation at the times when the respective portions of the plaintiffs' debt was incurred, and the number of shares held by each, insists, that the stockholders who were such when the respective portions of the plaintiffs' debt was incurred, are not jointly liable therefor, but severally liable for the same, and only in the proportion which the share or shares of each stockholder bears to the whole capital stock of the corporation, and not to exceed the value of the share or shares held by each; that the respondent is not liable for the said portions of the plaintiffs' debt incurred on or about the 31st day of March, 1847, and the 24th day of June, 1847, before he became a stockholder of said corporation, but only for the balance thereof, and in the proportion and with the restriction aforesaid; that he has advanced to said corporation the sum of $750, and his note for $250, now

15 *

174 NEWPORT.

N. Eng. Commercial Bank v. Stockholders of Newport Steam Factory; Munroe v. Same.

outstanding, and he claims to deduct the same, with interest on the said sum of $750, from any liability which he may be under for the debts of said corporation; that he has been informed and believes that the Newport Steam Factory on the ―― day of ――, 1858, conveyed to Seth W. Macy, real and personal estate of the value of $16,000, in trust, to be by him reduced to money and appropriated to the payment of the corporate debts; that the assignees of Philip Allen & Sons have declared a dividend out of the estate in their hands, and are ready to pay a dividend on the claims held by the complainants and set forth in the schedule thereof annexed to said bill, as the drafts of G. Bowen, agent, accepted by Philip Allen & Sons, and that said assignees, as the respondent has been informed and believes, will in April, 1859, declare and be ready to pay a further dividend upon said claims of the plaintiffs of from seven to ten per cent.; that the residue of said claims set forth in said schedule arises out of discounts made by the plaintiffs for said corporation of the drafts of G. Bowen, agent, on Aaron L. Lippincott, a part of which the respondent is informed and believes to be collectable; and the respondent insists, that the plaintiffs ought first, and before having any decree against him in this cause, to collect whatever is collectable from the acceptors of said last-mentioned drafts, and from the said assignees of Philip Allen & Sons, and from the said Seth W. Macy, assignee of said corporation.

To these answers the plaintiffs filed the general replication.

The other bill in equity was filed by the New England Commercial Bank of Newport, for themselves, and in behalf of all other unsatisfied creditors for the time being of the Newport Steam Factory, against Seth W. Macy, administrator of Joseph Weaver, Benjamin Finch, John Stevens, Benjamin H. Stevens, George Bowen, Stephen B. Chase, William C. Gibbs, Edward W. Lawton, Daniel Tisdale, James F. Simmons, and the Newport Steam Factory, averring, that the said defendants, and the said Weaver in his lifetime, were stockholders in the Newport Steam Factory, and were all holders of one share, each, in the stock of said company, except Gibbs, Bowen, and Stevens, who were the holders of two shares of said stock, each; the share

belonging to Stephen B. Chase standing in the name of George Bowen & Co. The bill then sets forth the charter and amendment to the charter of the company, by reference to them, as annexed, and states that in the years 1857 and 1858, the company became indebted to the plaintiffs for certain sums of money loaned to, and discounted for the company, specifying the sums by reference to a schedule annexed; and that the company having failed to pay the same, the plaintiffs, on the 15th day of April, 1858, recovered against the company therefor a judgment of the supreme court for the county of Newport, in the sum of $17,870.14 debt, and costs of suit taxed at $7.40, for which, on the 29th day of July, 1858, execution issued, and was delivered to the sheriff of the county of Newport, who, after diligent search and inquiry for property of the company upon which to levy the same, and after being informed by the president and treasurer of the company that there was no such property, on the 30th day of July, 1858, returned said execution, for want of such property to be by him found, wholly unsatisfied; that, on the 15th day of February, 1858, said corporation assigned all its real estate for the equal benefit of all its creditors; that the judgment of the plaintiffs has not been satisfied in any part, and that the corporation is wholly insolvent. The bill then proceeds to state, that Weaver died on the 1st day of April, 1856, intestate; that on the 2d day of June, 1856, Macy was appointed administrator of his estate; that the plaintiffs have frequently demanded payment of their debt from said corporation, from said stockholders, from Weaver, in his lifetime, and from Macy, his administrator, since his death, who have neglected and refused to pay the same or any part thereof; and prays, that Macy may be directed to pay from the proceeds of the estate of Weaver, if sufficient, the amount of their said judgment, with interest and costs, and that the other defendants be directed to pay any deficiency in the payment by Macy, and for further relief.

To this bill Seth W. Macy filed his answer, alleging therein that he had represented the estate of his intestate to be insolvent, the appointment and qualification of commissioners to receive and examine claims against the same, and their ap-

pointment of times for such receipt and examinations as in his answer to the other bill; the pendency of said commission at the time of filing the bill; and that the plaintiffs had presented no claim against said estate to said commissioners, so that he could object to the same, and that he had not consented to have the same settled by a court of law; that Nathaniel S. Ruggles and Charles Gyles were in their lifetime shareholders in the stock of said Newport Steam Factory, and that, upon their decease, their said shares became and were the property of their respective personal representatives, Mary L. Ruggles, administratrix of said Nathaniel S. and Pernissa Gyles, executrix of said Charles; that said corporation, without the consent of this defendant's intestate, undertook to purchase from said Mary L. as such administratrix, and of the said Pernissa, as such executrix, the respective shares of their decedents, but that said pretended purchase was not made at any duly notified meeting of the stockholders of said corporation, or at any meeting at which the defendant's intestate was present; that without the share of said Mary L. Ruggles being represented in said meeting there was no quorum of the members of said corporation present, competent to transact any such business, and that inasmuch as the said Mary L. could not vote upon the question of such purchase from herself, her share could not be considered as making up any part of a quorum for the transaction of such sale and purchase; that, in addition, said corporation had no power or authority to purchase any part of the capital stock of said corporation; and that inasmuch as said Pernissa Gyles as executrix and sole legatee of said Charles, and said Mary L. Ruggles, as administratrix and widow who received in her own right large personal estates from said Nathaniel S. are liable to contribute equally with this respondent from the estate of his intestate, they ought to have been made parties defendant with him to said bill; that having no personal knowledge of the fact, the respondent has been informed and believes that the corporation did execute to the complainants the negotiable paper, and the complainants did obtain judgment for the amount thereof, as set forth in the bill, and that he admits that his intestate owned one share, or

AUGUST TERM, 1859.          177

N. Eng. Commercial Bank *v.* Stockholders of Newport Steam Factory; Munroe *v.* Same.

fifteenth part of the capital stock of said corporation; but that the estate of his intestate is only liable to such proportion of the corporate debts as said one share bears to the whole capital stock of the corporation; and that for such proportion of said indebtment, the estate of his intestate is only liable after deducting the other debts due from his intestate and the expenses incidental to the settlement of his estate.

The answer of *Benjamin Finch* alleges the same facts to impeach the validity of the sales by Mary L. Ruggles and Pernissa Gyles of their respective shares in the stock of the corporation to the corporation, and insists, that they should have been made parties defendant to the bill, and that the complainants should be decreed to make them parties, or that all the defendants should be decreed to be liable only for thirteen fifteenths of the complainants' said debt; that the Newport Steam Factory was indebted to the complainants, and that the complainants did obtain judgment against said Newport Steam Factory as set forth in said bill, that execution was issued thereon and return thereof made, as in said bill alleged; but that the said persons named as defendants, who are or were stockholders of said corporation, are not jointly liable for the debts of said corporation, but are severally liable only for such proportion of said debts as the share or shares by them respectively held bear to the whole capital stock of said corporation, after deducting from such proportion the amount in which the corporation shall be indebted to the stockholders, and adding thereto the amount in which they may be indebted to said corporation; that said corporation has assigned to Seth W. Macy, in trust, to be sold and appropriated to the payment of the corporate debts, real and personal property of the value of $16,000; that the assignees of Philip Allen & Sons are ready to pay a dividend on the debts due by said Philip Allen & Sons to said corporation, and that some part of the amount due by draft from Aaron Lippincott to said corporation is collectable; and that the complainants ought first to resort to these sources of payment, before asking a decree against this respondent.

The answer of *James F. Simmons* to this bill was in the same words as his answer to the bill against Samuel Allen and others.

The other defendants filed no answers, and no replication appeared to have been put in.

Accompanying the bills, was a paper headed " Statement of facts in the matters of the bills in equity of the New England Commercial Bank against Seth W. Macy, administrator, Benjamin Finch et al.," but which was without signature. In this it was stated, that on the 1st day of January, 1847, William C. Gibbs, John and Benjamin H. Stevens, George Hall, and Edward King held two shares each, in the capital stock of the Newport Steam Factory, and that George Bowen, Samuel Allen, George Bowen & Co., J. & P. Rhodes, Nathaniel S. Ruggles, Daniel Tisdale, and Edward W. Lawton held one share each, in said capital stock; that the whole of said capital stock was divided into fifteen shares of the par value of $3,000 each, all of which had been paid in; that in addition to this, on the 23d day of April, 1850, an assessment of $1,000 on each share was made, all of which was paid in, with the exception of a balance of $250, and that a further assessment of $500 per share was laid in 1852, which was paid upon the shares of said stock standing in the names of Samuel Allen, Joseph Weaver, George Bowen & Co., George Bowen, and Edward W. Lawton; that the indebtment of said corporation to the New England Commercial Bank, accruing before the —— day of —— 185–, accrued in the manner and at the times set forth in the answer of George Bowen; that when said indebtment accrued, George Bowen, the treasurer of the Newport Steam Factory, was the president of said bank, and that Josiah S. Munroe and Samuel Allen, directors in said bank, knew of the transfers of the shares in the Newport Steam Factory at the times said transfers were made; that all of the meetings of said Newport Steam Factory were called by notifying, personally, the stockholders, of the time and place of meeting; if any of the stockholders who resided in town were out of health, or were residing out of town, when it was supposed to be impracticable for them to attend the meetings of the stockholders, they were not notified; that Joseph Weaver, being in ill health, and Daniel Tisdale, being out of town, were not notified of the special meeting at which the sales of the shares of Ruggles and Gyles

to the corporation were made, nor were they present at that meeting; that the corporation is largely indebted to Benjamin Finch, George Bowen, and Edward W. Lawton, and that John Stevens has conveyed the property in trust for the payment of the debts due from said corporation, as is set forth in his answer; and Seth W. Macy has property in his hands, which he holds in trust to pay the debts of said corporation, as is set forth in his answer; that on the 19th day of August, 1847, George Hall sold one share of his stock in said corporation to Charles Gyles, and, on the same day, sold his remaining share to Joseph Weaver; that Samuel Allen, on the 10th day of January, 1853, sold his share in said capital stock to Benjamin Finch; that, on the 31st day of July, 1847, Edward King sold one of his shares in said capital stock to George Bowen, and, on the same day, sold his other share to John Stevens; that on the 6th day of August, 1847, James T. and Peleg Rhodes, conveyed their share in said capital stock to James F. Simmons; that Nathaniel S. Ruggles died on the —— day of —— 1846, and Mary L. Ruggles, his widow, was duly appointed to administer his estate, and on the —— day of —— 184- was qualified according to law to act in said capacity, and then gave notice of her said appointment; that Charles Gyles died on the —— day of —— 184-, leaving a last will and testament, a copy of which is hereunto annexed, which was duly admitted to probate, and letters testamentary were issued thereon to Pernissa Gyles on the —— day of —— 18—, who then gave notice of her said appointment; that Joseph Weaver died at the time, and such proceedings were had in settling his estate, as is set forth in the answer of Seth W. Macy; that Mary L. Ruggles and Pernissa Gyles made sale of the respective shares of their intestate and testator in said capital stock, if the following facts constitute a sale. Mary L. Ruggles was appointed and qualified as the administratrix of Nathaniel S. Ruggles, and on the 9th day of December, 1852, she, with Pernissa Gyles, the executrix of the last will and testament of Charles Gyles, proposed to sell the stock of their intestate and testator to said corporation; that William C. Gibbs, John Stevens, Samuel Allen, George Bowen,

Edward W. Lawton, and George A. Richmond, representing Mrs. Ruggles, were present at the meeting. They knew the object of the meeting, but none of the other stockholders had notice of, or knew of the meeting, with the exception of James F. Simmons, who knew of it, but was not present. Neither Mrs. Ruggles, nor Mrs. Gyles had any authority from the court of probate to make sale of the stock; and the corporation at this meeting voted to purchase it, and conveyances were made by the parties to the corporation of the stock, which may be referred to in connection herewith. Mrs. Ruggles and Mrs. Gyles each paid to the treasurer of the corporation a sum of money, at the time they conveyed their shares.

The unsigned paper containing the above statement of facts is in the handwriting of one of the counsel for the defendants. Accompanying this, and in the handwriting of one of the counsel for the complainants, was another paper, containing the following statement: —

"The Newport steam mill had obtained discounts, from time to time, from the New England Commercial Bank; and on the third day of February, 1852, the notes held by the bank were given up by the bank, and a new loan made by the bank to the Newport Steam Factory, and new notes for said loan were given the bank, by reason, that shortly prior to that time a change had been made in the ownership of some of the stock of said Newport Steam Factory, and intending at the time of said loan to make a new contract with the new stockholders. The notes given on said third day of February 1852, are the notes upon which judgment has been obtained, and upon which this bill is filed. The acceptances upon which the judgment was obtained, and upon which the second bill in equity was brought, were given during the year 1857. The executions against the corporation have been returned *non est.*

*Bradley,* for the complainants.

1. The stockholders of the Newport Steam Factory are severally, or jointly and severally, liable to its creditors for the payment of the entire debts of the corporation. Such a liability is created by the terms of the charter. The amendment of January, 1840, is: "All executions that shall issue against

said corporation shall be levied on the property of said corporation, and for want of such property the stockholders, who were such at the time the contract was made or liability incurred, shall be liable in their own persons and estates, as if the contract had been made or liability incurred by them personally." (Sect. 2 of the amendment to Charter of Newport Steam Factory, January, 1840.) This construction is especially appropriate, as the charter does not provide for the creation of a capital stock, but leaves that to the discretion of the corporators. It is also confirmed by the provision, giving a right of action by one corporator, who has paid more than his share of the company's debts, against another, for contribution. (Sect. 9.) As to the effect of this provision, see *Crease et al.* v. *Babcock et al.*, 10 Metcalf, 525, 559. This construction accords with that put upon the language of the charter by the corporators in their application to the general assembly for an amendment. (See petition for amendment and original 8th section.) The effect to be given to the petition to the general assembly, as a construction by the parties, is shown in *Atwood* v. *R. I. Agricultural Bank*, 1 R. I. Rep. 376, 387. Such is the policy of our manufacturing corporations laws.

2. The decisions on similar statutes in other states confirm the construction here claimed. Under the general manufacturing incorporations act (of March 22, 1811), in New York, which provides, " That for all debts which shall be due and owing by the company at the time of its dissolution, the persons then composing such company shall be individually responsible to the extent of their stock," (3 Rev. Sts. N. Y. 311, 1829,) it was held, that each stockholder was severally liable for the whole debt, not exceeding the amount of his stock. *Bank of Poughkeepsie* v. *Ibbotson*, 24 Wendell, 473; *Same* v. *Same*, 5 Hill, 471. These cases are cited as law in Angell & Ames on Corporations, § 619, with the remark, that the usual construction is in favor of the several liability.

3. If the liability be not simply several, or joint and several, it is in the nature of a copartnership liability, as in the case of *Allen* v. *Sewell*, 2 Wend. 327, where the stockholders were

by charter individually liable for all contracts. The court say this is in the nature of a copartnership liability.

4. The creditor may, in equity, collect his whole debt from the estate of the deceased corporator or partner. According to Adams's Equity, 172, " where a loan has been made to several persons jointly, it must be presumed that every debtor was to be permanently liable, until the money should be paid; and that, therefore, a debt so arising, though at law it is the joint debt of all the co-debtors, shall be treated in equity as the several debt of each." 3 Kent's Com. 64; 1 Story's Eq. Jur. § 676; 1 Story's Partnership, § 361, and cases cited, especially *Devaynes* v. *Noble*, 1 Merivale, 529; 2 Russ. & Mylne, 495; *Wilkinson* v. *Henderson*, 1 Mylne & Keen, 582; *Hamersley* v. *Lambert*, 2 Johns. Ch. 509. The early cases, which doubted whether a bill could be maintained unless the surviving partner were first prosecuted, proceed upon the idea that the joint effects were in his hands, and should be first exhausted. In this case, the joint effects were in the hands of the corporation, and have been exhausted, as is sufficiently proved by the sheriff's return of the execution against them. Angell & Ames on Corporations, § 614. To apply these views to the cases under consideration: In the actions at law, by the demurrer for non-joinder of parties, the defendant raises the question of several or joint liability. If, as we contend, the construction, that each stockholder is liable as if he had personally made the contract, is the true construction of the charter, then the demurrer must be overruled, and we take judgment at law for our debt against the defendants, either severally, or against all, they being the surviving partners of the company. If the court hold the liability to be joint, or like that of copartners, then we may proceed in equity against the estates of deceased stockholders, the survivors being parties merely for the purpose of taking the account, and not strictly necessary parties, but to be dispensed with under the 23d rule of this court, and this being also a rule of general equity practice.

*Sheffield & Wm. H. Potter*, for the respondents, excepting James F. Simmons.

AUGUST TERM, 1859. 183

N. Eng. Commercial Bank *v.* Stockholders of Newport Steam Factory; Munroe *v.* Same.

1. The liability of the stockholders of the Newport Steam Factory to the corporation, was limited to the sum of $3,000 on each share, which sum having been paid in, exhausted the power of the corporation to assess the stockholders for any loss or deficiency which might occur.

2. At common law there is no personal liability upon corporators for the corporate debts; and the court will not enlarge by construction such a liability imposed by statute. The charter of the Newport Steam Factory, as it originally stood, imposed upon its stockholders the liability of copartners, which amounts to a liability of each for the entire debts of the corporation. This, however, was repealed, and there was substituted for it, by the amendment of 1840, a liability upon the corporators who were such at the time the contract was made, for such contract, "in their own persons and estates, as if the contract had been made by them personally;" and that, not to be enforced against the corporators in the first instance, but only secondarily, in case of suit and execution against the corporation, and want of sufficient corporate property to pay it. The condition thus annexed to the liability of the corporators makes it entirely different from what it would have been if the contract had been made by them personally, notwithstanding the expression to that effect; and as the charter nowhere defines the extent of the liability, the court will not, by judicial legislation, do so. This liability, whatever it is, is several, and not joint, since the charter does not declare it to be joint. A joint liability is never construed to exist unless it is expressly created by charter or act of incorporation. *Bond* v. *Appleton,* 8 Mass. 472; *Pratt* v. *Bacon,* 10 Pick. 127; *Andrews* v. *Callender,* 13 Ib. 484; *Baker et al.* v. *Atlas Bank et al.* 9 Met. 182; *Bank of Poughkeepsie* v. *Ibbotson,* 24 Wend. 473; *Same* v. *Same,* 5 Hill, 461; *Moss* v. *Oakley,* 2 Hill, 265; *Judson* v. *The Rossie Galena Co.* 9 Paige, 598. In *Atwood* v. *Rhode Island Agricultural Bank,* 1 R. I. Rep. 376, the stockholders were held liable only to the amount of the par value of their stock; and although the amount so assessed was insufficient to pay all the debts of the bank, the court decided, although it is not reported, that the solvent stockholders were not liable to pay

184 NEWPORT.

N. Eng. Commercial Bank *v.* Stockholders of Newport Steam Factory: Munroe *v.* Same.

the proportions of the insolvent stockholders, or to make up the deficiency. This decision must have proceeded upon the ground that the liability was several and not joint. The secondary, several liability of the stockholders in this case cannot be extended beyond the amount of the par value of the stock of each. See *Wood* v. *Dummer*, 3 Mason, 308. Again, the stockholders are *liable* merely, and not *indebted*. A liability is not a debt; since it may never become fixed, or the person liable be bound to pay anything under his liability. *Kelton* v. *Phillips*, 3 Met. 61. The liability is confined to the debts originally contracted whilst he is a stockholder, by the very terms of the amendment, and remains upon the stockholder after he has transferred his stock. The stock is indeed transferred subject to the corporate debts; but the secondary liability is not transferred with the stock to the purchaser of it. No stockholder can in any manner be liable for debts of the corporation incurred before he became a stockholder, notwithstanding a new or continued existence has been given to them. *Moss* v. *Oakley*, 2 Hill, 275; *Judson et al* v. *The Rossie Galena Co. et al.* 9 Paige, 598. This is not like the cases of *Bank of Poughkeepsie* v. *Ibbotson*, 24 Wend. 473, and *Slee* v. *Blum*, 3 Johns. Ch. R. 566, where the stockholders, who were such at the dissolution of the corporation, were by the terms of the acts made liable for the corporate debts. We claim the benefit of this in application to the several cases which are pending. If the statute of limitations has barred the claim as against Gyles and Ruggles's estates, and they are discharged, this operates, under our statute authorizing the release of one of two joint debtors, as a release *pro tanto* of the claim, (Rev. Sts. ch. 114, § 2,) the case being within the equity of the statute. See *Bank of Poughkeepsie* v. *Ibbotson*, 5 Hill, 461.

*Currey*, for James F. Simmons.

1. The liability of the corporators, if any, is not primary, but secondary, and arises only upon an ascertained deficiency of the corporate property. Sect. 2, Amendment of Charter.

2. The liability of the corporators is not *total*, but *proportional*, and co-extensive, not with the corporate indebtedness, but with the capital stock of the corporation. *Atwood* v.

*R. I. Agricultural Bank*, 1 R. I. Rep. 376. This proportional, as distinguished from a total liability, is deducible from the general scope and purpose of the act of corporation, with its amendments. The corporation itself is the principal debtor; the corporators are liable, if at all, only as guarantors. The stockholders are not liable *as such* generally; but only as being such when the corporate liability was contracted; *when* contracted, means, when *originally* contracted; so that subsequent stockholders are not liable for *renewals* of debts contracted before they became stockholders. The amendment shows that credit was primarily to be given to the corporation, on the basis of the capital stock, with the guaranty of the then stockholders that the capital should be kept available for the creditors *to the extent of its par value.*

3. The charter and its amendments in fixing the *minimum* of the number and value of the shares, and in imposing this guaranty upon the stockholders, provided a sure basis for reliable credit, to the extent of the capital stock at any given time. Those giving credit to the corporation, might always hereby know the value of their security for payment.

4. The charter, by providing that no stockholder should be involuntarily liable to an assessment beyond $3,000 on each share, thereby indicated the maximum of liability imposed upon the ownership of each share for the corporate debts.

5. Any other construction would defeat all the purposes of the act of amendment, the sole purpose of which was to qualify the primary and total liability of the corporators. The language of the amendment is, that the corporators shall be liable " *as if* the liability had been incurred by them personally;" not, " *the same* as if," or " in the *same manner* as if," or " to *the same extent* as if," leaving the manner and extent of the liability perfectly undefined, except so far as it can be collected from the general scope of the charter as it *was*, and as it *is* after amendment. Now, the capital stock was the basis of corporate credit, and the just and reasonable limitation of the personal liability of the stockholders is the measure of their interest in it.

6. The liability of the corporators, whatever the extent of it,

16 *

is a several and not a joint liability. The amendment expressly repealed the joint or copartnership liability, and substituted for it *secondary* liability, the extent of which was to be determined in each case by the corporator's interest in the capital stock. Such a several, secondary, and proportional liability would be just and reasonable, whilst the liability contended for by the plaintiffs would be arbitrary, unjust, and ruinous.

The conclusions are : —

*First.* That the liability of this defendant, if any, for the debts of the corporation, can, in no just view of the case, exceed $3,000, the par value of the one share of stock held by him.

*Second.* That if the entire indebtedness of the corporation, remaining after the full exhaustion of the corporate property, shall be less than the aggregate of the capital stock, then the amount or extent of the defendant's liability will be, in the same proportion, less than the par value of his one share of stock.

*Third.* That from the defendant's liability, thus ascertained, is to be deducted, in order to determine the final amount thereof, the indebtedness of the corporation to him ; for, as by sect. 3, of the original charter, the principal debtor had a lien on the stock for debts due to the corporation — a provision resulting ultimately for the benefit of the creditors — so any indebtedness of the corporation to the stockholders is a fair and equitable set-off against the liability imposed upon the ownership of stock for the benefit of creditors.

*Lastly.* That no final decree can be rendered in either of the plaintiff's causes against this or any defendant, until after the corporate property shall have been wholly exhausted.

AMES, C. J. The main question in these cases, upon which nearly all other questions raised in them turn, relates to the nature and extent of the personal liability for the corporate debts imposed by the charter of the Newport Steam Factory upon its stockholders. This liability is claimed by the defendant stockholders to be several, not joint ; to be secondary, in

the sense of a mere guaranty that the capital stock, to the amount of some $45,000 or $48,000, shall be forthcoming, if needed, to the creditors of the corporation; and to be limited, as against each stockholder, to the amount of capital stock by him held, after deducting therefrom any debt which may be due to him by the corporation; and that a judgment or decree, even for this sum, cannot be rendered or entered up against him, until all the corporate property has been first exhausted.

We cannot agree to the soundness of this claim, or to the reasoning by which it is attempted to be supported.

The charter of this corporation, as it was originally granted, not only made the stockholders, who were such at the time when the contract was made or liability incurred, liable in their persons and estates therefor, in case no corporate property could be found to satisfy an execution issued to enforce the contract or liability against the corporation, but gave to the creditor the election to proceed, *in the first instance*, against such stockholders, precisely as if they had been mere copartners under the corporate name. It was only this right to proceed against the stockholders *in the first instance*, of which they complained to the general assembly, in 1840, as unusual and inconvenient, and of which, in effect, they procured the repeal. By the express terms of the act in amendment, if there should be no property upon which to levy an execution issued against the corporation, the stockholders designated in the act, were still to be "liable in their own persons and estates, as if the contract had been made, or liability incurred by them personally." Language can hardly be conceived more plainly imposing an unrestricted personal liability, both by force of the words "in their own persons and estates," and of the remaining words of the sentence, "as if the contract had been made or liability incurred by them personally." Notwithstanding the minute criticism which has been addressed to us upon the construction of this clause of the charter, we must hold the plain sense of the words "as if," in it, to be, "in the same manner and to the same extent," that is, "just as if" the corporators, instead of the corporation, had contracted the debt.

That such a liability is made conditional upon want of cor-

porate property upon which to levy, in no way conflicts with this extent of liability when the specified occasion for its enforcement shall arise. So far from it, upon this construction, the stockholders are left precisely where their petition for the amendment request that they shall be — relieved from the " great inconvenience" of being proceeded against for the corporate debts, *in the first instance*, whilst, for the payment of such debts, the security of the public is undiminished.

The attempt to imply from the amount in which the corporation is authorized by the charter to assess its stockholders, a limit of their liability to that amount for the corporate debts, confounds the domestic relations of the corporation, which concern only its members, with the remedies of its creditors, which concern the public. The argument is all the other way; since, the less the corporate power to assess for the payment of debts, the greater the necessity of effectual remedies against the corporators, for their collection.

Besides, the *ninth* section of the charter, which was retained as a necessary part of it, notwithstanding the amendment, is utterly at war with the restricted liability contended for by the defendants. This section gives to any stockholder, whose property shall be sold for the payment of a debt of the corporation, or who shall be compelled to pay such debt, or any greater proportion thereof than is due to his stock, an action against the corporation to recover the amount so paid, and against the stockholders, to recover the amount paid by him over and above his just proportion. According to the argument of the defendants, the occasion thus provided for can never arise; since no stockholder, by their construction of the charter, can be subjected, at the suit of a creditor of the corporation, to more than his just proportion of a corporate debt.

It is true, that the common law visits no personal liability upon the members of a corporation aggregate for its contracts; but for this very reason the policy of this and other states and countries of the common law has, by express enactment, imposed such a liability, in some form, upon stockholders in incorporated trading and manufacturing companies, in order that the public may be secured against the consequences of the

extravagant speculations, or even of the incautious enterprises, of such bodies corporate. We may lament the private calamity which, in particular instances, has grown out of this policy; but, because we do so, have no right to pervert the clear sense of a positive enactment designed to carry it out; and if we had, should only turn from some the ruin which we should thereby bring upon others.

The same language of the charter which describes the extent, ascertains also, when construed in reference to its subject, the character of the liability thus imposed. " The stockholders, who were such at the time the contract was made or liability incurred, shall be liable in their persons and estates as if the contract had been made or liability incurred by them personally," is certainly language which imports a joint liability in the nature of that of copartners; and when it is recollected, that the liability spoken of is for debts contracted in a business carried on by all, for the profit of all, we cannot doubt but that this was the species of liability intended. To carry the analogy to copartnership still farther, by the concluding clause of the section, the stockholders are to be holden, not only for all debts incurred up to the time of the sale and disposition of their stock, but until public notice of such sale or disposition is given in some public newspaper printed in the place in which they transacted their business.

In the contingency, then, that a judgment creditor of the corporation can find no corporate property upon which to levy his execution, he is entitled to proceed against such stockholders as are liable for his debt, as joint contractors, or copartners. So far as living stockholders are concerned, his complete and appropriate remedy against them is at law, as against other copartners; his declaration stating, of course, the want of corporate property which entitles him to proceed against the stockholders liable to him, in that character.

On the other hand, in case of the death of one or more joint contractors or copartners, the liability at law remains only against the survivors; and so a creditor of this corporation, if he would pursue the estates of deceased stockholders, can only do so in equity, which, for the sake of the remedy, and to cor-

rect the form of the contract so as to carry out its substance, construes it to be several as well as joint. It is true that the law expresses, in the act of incorporation, the form of the liability of the stockholders, as well as imposes it upon them ; but the same law also provides, looking to the remedy, that the stockholders shall be liable in a certain contingency for a corporate debt in the same manner as if they had personally contracted it, and thus expressly subjects the form of the liability to the ordinary equitable correction.

As the law has been settled by the leading case of *Devaynes v. Noble*, 1 Mer. 529 ; S. C. 2 Russ. & Myl. 495, a creditor of the firm may pursue the estate of a deceased copartner, and so here, a creditor of the corporation, the estate of a deceased stockholder liable to his debt, for payment out of the same, without reference to the state of accounts between the copartners or stockholders and the firm or corporation, or to their solvency or insolvency ; leaving the estate to seek repayment from the firm or corporation, or contribution from those liable to it. A mere equity, however, which is all that a creditor of the firm or corporation has against the separate estate of the deceased copartner or stockholder, cannot compete with an equal equity united to the legal right, of the separate creditors of the estate, to have their debts satisfied out of it ; and hence, his right is only to the surplus of the separate estate after all its expenses and separate debts have been paid. *Gray v. Chiswell*, 9 Ves. 118 ; *Arnold v. Hamer*, 1 Freeman (Miss.) Ch. R. 509 ; 2 Leading Cases in Equity, Hare & Wallace's notes, 317–321, and cases cited.

In case of the death of two or more of the stockholders liable, there seems to be no objection, on the ground of multifariousness, to seeking an account of, and payment from, their respective separate estates, in the same bill ; or rather, the conveniences of such a joinder are deemed to overbalance the inconveniences of it ; *Brown v. Weatherby*, 12 Sim. 6 ; *Wilkinson v. Henderson*, 1 Myl. & Keene, 582 ; but as two or more creditors for whose claims different sets of stockholders are liable, cannot unite them all in the same bill, for the purpose of separate relief against those respectively liable to them,

AUGUST TERM, 1859. 191

N. Eng. Commercial Bank *v.* Stockholders of Newport Steam Factory; Munroe *v.* Same.

(*Judson* v. *The Rossie Galena Co.* 9 Paige 597, 603,) so, we apprehend that, for the same reason, the same creditor cannot enforce in the same bill, against the estates of deceased stockholders, different debts, for which all the estates pursued are not liable. Both at law and in equity, only those causes of action *ex contractu* can be joined in the same suit to which all the parties defendant were originally liable.

In pursuing the estate of a deceased stockholder for the payment of a corporate debt, it is obvious, that all the living stockholders and representatives of the estates of deceased stockholders liable to it, are interested in the account sought to be taken, and should be made parties to the bill; *Pierson* v. *Robinson*, 3 Swanst. 139, note; Story's Eq. Pl. §§ 166–168; whilst, on the other hand, the bill would be objectionable for the misjoinder of persons not interested in it, and as to them must be dismissed or amended. As we have no statute making the real estate of deceased persons personal assets for the payment of debts, but such estate, notwithstanding the insolvency of the deceased, descends to their heirs at law, — if the real estate of a deceased stockholder is sought to be charged, his heirs, in case of intestacy, and devisees, if there be a will, must, as well as his personal representatives, be made parties to the bill.

For the sake of brevity, we have stated in this general form the rules which govern the joinder of parties and causes of action applicable to the suits submitted to us, and which easily resolve the various questions upon those points which have been, or may be, raised. One or two questions require, however, more particular attention.

It is objected by the defendants to the bill in which the New England Commercial Bank seek to enforce their debt, earliest in date, against the estates of Weaver, Ruggles, and Gyles, that when the first portion of this debt was incurred, amounting to about forty-eight hundred dollars, George Hall, Edward King, and the firm of J. & P. Rhodes were stockholders, and should have been made parties defendant to the bill. As they are not in any form sought to be charged by the plaintiffs, and are not made parties to the bill, we shall notice only this objection of their nonjoinder as defendants, upon the facts which have been

stated to us as agreed in the case.  In the portion of this statement which is in the handwriting of the counsel for the plaintiffs, it is said, that on the third day of February, 1852, which was after these stockholders had sold their stock, and had probably given notice that they had thereby ceased to be stockholders, " the notes held by the bank were given up by the bank, and a new loan made by the bank to the Newport Steam Factory, and new notes for said loan were given to the bank, by reason, that shortly prior to that time a change had been made in the ownership of some of the stock of the Newport Steam Factory ; and intending, at the time of said loan, to make a new contract with the new stockholders.  The notes given on said third day of February, 1852, are the notes upon which judgment has been obtained, and upon which this bill is filed."

If this is to be taken by us as a portion of the agreed statement of facts, it certainly disposes of the objection we are considering.  The giving up by the plaintiffs of the old notes and the taking of the new, after the retiring of these stockholders, and for the express purpose of their discharge, upon every principle, and by all the authorities, operates as a complete release of the stockholders from the debt.  Collyer on Partnership, §§ 539–562, and cases cited.

The defence set up by the answer of Pernissa Gyles, executrix of Charles Gyles, late of Newport, to the account sought from her, in that capacity, of the personal estate of her husband and testator, seems to us to be a good one.  The facts alleged by her, and which are substantially admitted in the agreed statement, are, that on the 10th day of May, 1849, her said husband, then the holder of one share in the capital stock of the Newport Steam Factory, died, leaving a last will and testament by which she was constituted his executrix, and sole devisee and legatee ; that his said will was duly proved, and letters testamentary were issued to her, and that subsequently, on the 21st day of July, 1849, she caused public notice of her appointment and qualification as his executrix to be published in the " Newport Mercury," a newspaper printed and published in said Newport ; that, thereafter, she went into pos-

session under said will of all the estate, real and personal, of her said testator, and out of the same paid all his debts, funeral expenses, and expenses of settling his estate, and, on the 21st day of April, 1851, settled with the court of probate of Newport her final account as such executrix; and that more than three years had elapsed, subsequent to the publication, as aforesaid, of notice of her appointment and qualification as his executrix, before the filing of this bill. In the absence of fraud, which is not pretended in this case, the bar of the statute limiting suits against the personal representatives of deceased persons to three years after publication of notice of their appointment, is positive and without exception; and rests upon the policy of thus enabling the speedy settlement of the estates of the dead. Rev. Stats. ch. 161, § 8; ch. 177, § 9; *Pratt et al.* v. *Northam et al.* 5 Mason, 95. It is equally applicable to suits in equity as to actions at law; and has been applied by this court as a bar to a bill brought against the administrator of a deceased shareholder in an insolvent bank, to compel payment out of the estate of the intestate of his proportion of the corporate debts. *Atwood et al.* v. *Rhode Island Agricultural Bank et al.* 2 R. I. Rep. 191. This, of course, leaves the question of Mrs. Gyles's liability, as herself a stockholder, by virtue of her husband's bequest to her of his share of the stock of the Newport Steam Factory, and her acceptance of the bequest, wholly unaffected.

How far the above defence availed of by Mrs. Gyles, in her administrative character, is available to Mrs. Mary L. Ruggles, as administratrix of her husband, Nathaniel S. Ruggles, and how far the general statute of limitations will avail both Mrs. Ruggles and Mrs. Gyles, as successors to the real assets belonging to their respective husbands, we shall reserve; since Mrs. Ruggles has not come in and answered the bill, and no argument has been submitted to us upon these points. Both bills will probably be found to require amendment as to parties, and in other respects; and if it shall prove necessary for the plaintiffs, in order to obtain satisfaction of their debts, to pursue the estates of deceased stockholders, full opportunity will thus be afforded for these and other questions to be raised and argued.

For the same reason we reserve the questions which have

been incidentally raised concerning the validity and effect of the conveyances of their shares, both by Mrs. Gyles and Mrs. Ruggles, to the corporation ; which, complicated with the length of time and other circumstances which have intervened since the conveyances were made, will demand distinct argument and consideration before they can, properly, be passed upon by the court.

It remains to be seen, how far what we have decided affects, in their present position, the actions at law which have been submitted to us. In the *first* place, it is clear, that as no legal liability for the corporate debts survives against the estates of deceased stockholders, the two actions brought by the New England Commercial Bank, and by Josiah S. Munroe, respectively, against Seth W. Macy, as administrator of Joseph Weaver, and the action brought by said bank against Samuel Allen, as executor of Samuel Allen, deceased, cannot be maintained ; and, for the same reason, that the pleas, that Seth W. Macy, in his said capacity, is not joined as a party defendant to the two actions brought by said Munroe against certain living stockholders of the corporation, must be overruled. In the *second* place, that, as the stockholders who were such at the time of the contracting of a debt, are, for want of corporate property to be levied on therefor, liable for the debt as joint contractors, in the nature of copartners, this liability may be enforced against such living stockholders, and is, as against other copartners, most appropriately enforceable against them, by action at law, rather than by a proceeding in equity ; and that, to defeat this right of action, it is not sufficient that the corporation should have property, in trust or otherwise, not open to seizure or levy upon execution, but that it should have property in such a condition that the execution, which must have been first obtained by the creditor, might have been levied thereon. This in effect disposes of the remaining special pleas filed in the last-named actions at law, and leaves them for trial upon the general issue. As to the two remaining actions at law, brought by the New England Commercial Bank against certain stockholders of the Newport Steam Factory, and in which the writs and declarations are missing, the actions must be dismissed unless these are found, or their loss, in some form, be supplied.